Good morning, your honors. Matt Campbell from the Federal Defenders of Eastern Washington on behalf of Eastern Washington in Idaho, I should say, on behalf of Jeremy Bohlman. I'm going to attempt to reserve three minutes for rebuttal. Mr. Bohlman's trial was rendered fundamentally unfair by two erroneous district court rulings. The district court admitted under federal rule of evidence 413, Mr. Bohlman's prior conviction, which was over 10 years old, and it amounted to a statutory rape conviction. This admission was erroneous because the conviction was factually dissimilar to the instant allegations, remote in time, infrequent in occurrence, and unnecessary. Let me ask you a question. Yes. Because we could disagree as to what the judge did, and maybe we would do something else, but the standard is that it was illogical, implausible, or without support of facts in the record. First, did the judge procedurally do anything wrong or fail to do anything that would constitute reversible error? Was there a whole hearing? Did he do something, or you wanted him to do something that he didn't do, or otherwise it is something that he shouldn't have done procedurally? Your honor, the district judge, in essence, there were several motions filed on both sides. The district judge decided those motions without a hearing. I guess I'm not specifically bringing it up. You mean the 412 motion and the 413 motions? He didn't have a hearing? He did not have a specific hearing on those motions. He decided those and issued sort of a lengthy omnibus order on all motions and lemonade and the like, which is, I believe, at ER pages 3 through 14, give or take. He didn't have a hearing on those. I understand your response to my colleague. Are you saying there was a motion in limine and the parties weren't in the judges chambers to discuss it? There was no face-to-face discussion of it. It was filed on paper, and the order specifically states that Judge Lodge found it sufficient to decide on paper. So each party presented its arguments on paper, and the judge decided without an oral argument. Is that right? Correct. But specifically, so from that perspective, I think our argument is that the district judge made conclusions which were erroneous because they didn't... Well, they had to be more than erroneous. They have to be logical and implausible and without support in inferences that may be drawn from the record. And I think that they are here. Specifically, if we look at that order, Judge Lodge made the determination that the prior conviction was dissimilar under when he discussed 404B. He specifically said they're dissimilar, the circumstances are not similar at all, and he noted that one involved allegations involving a minor, which was essentially a statutory rape conviction, and the allegations here were a violent rape against someone's will. So Judge Lodge specifically found that they were dissimilar allegations, which is the first factor under LeMay, and yet he issued, in essence, a contradictory ruling. But didn't he balance them? I mean, some some went one way, some went the other, and then he made a call. We would argue that none went in favor of the government. There were over ten... there was... frequency went against the government in that there were simply one prior allegation. There were no intervening circumstances that would justify it. And frankly, it wasn't necessary. The government had over... had ten or more witnesses who all testified. They were allowed to testify to things such as that the complaining witness behaved consistently with what one would expect from a rape victim, which caused problems for our second argument. It That's the most interesting argument that you have here, because it appears that you're arguing this... these inconsistent rulings because that prior 2006 conviction wasn't allowed under 404 B, but was allowed under 413. Is that correct? That is correct. And his... the district court's basis for its ruling on was there was no consent in terms of why it was similar. I'm focused on the similarity here. Yes, sir. Because I think that may be your strongest argument. What's your best case that level of generality, just that because the one conviction was involved a minor, the other one wasn't a minor, but it was a non-consensual sex, what's... what's your best case that that's insufficient level of similarity for the 213? Your Honor, I think it's... it's harder to find cases in which the evidence was disallowed than that the evidence was allowed. But I think the consistency that we see in cases like LeMay, in cases like Luna, in cases like the Dobie-Glanzer case, is that typically they're involving, for lack of... child molestation type allegations, where the similarity is a prurient interest in children. And what we have... and that is the analysis that the courts engage in. And what we have here is a situation where we don't... simply don't see that. We see one case involving, allegedly, a prurient interest in children, one case involving the violent rape of an adult female. So we simply just see a disparate analysis that we don't typically see. Yeah, but 412, isn't the direction that we ought to treat and interpret 412 the same way as 413? That is the... the children's cases the same as the... as the I think it's 413 and 414. I would agree that they're generally seen interchangeably. But what we typically don't see is a situation where, in essence, you almost have one 413 case and one 414 case, and you say those are similar. And really, Judge Lodge said, they're similar because they're sexual assault cases. And that was it, in terms of similarities. So my next question for you is, when you look, though, at the facts underlying the 2006 conviction, there does appear to be some similarity. Because it looks like they were part... in the 2006, which kind of tracks what happened in the underlying facts here, they were partying. In that case, the victim was a 15-year-old girl with an eight-year difference between the defendant versus a ten-year difference with an adult female. But otherwise, a lot of the similar situation was drinking, drugs. Both of them, in the 2006 conviction, acknowledged that they had been talking to each other, and seems like they were hanging out in both situations. And the lead-up to both of the situations seems very similar. So, even if accepting your argument regarding the inconsistency, which I acknowledge, is... gave me some pause, why isn't the decision ultimately harmless? Because Judge Lodge specifically determined that the facts that you just mentioned shouldn't come in. The only facts that a jury was given regarding this conviction was essentially the first page of the judgment, which simply stated what the conviction was. The jury was never supposed to hear any facts regarding... Well, you objected to that. Judge Lodge, in his ruling on paper that I spoke of, said, essentially, he would allow the fact of conviction, the charge, and that's it. In getting there, didn't the defendant object to having the facts presented to the record? I mean, yes, I suppose. We objected to all of it. What you're basically saying is that you were better off if the facts... if the conviction itself sounds worse than what the facts would have shown. Well, the conviction itself is dissimilar, and really amounts to purely telling the jury he has a prior conviction. And that analysis that Your Honor just went through was not part of Judge Lodge's analysis. But then, exacerbating that error was the fact that the government, in effect, testified during closing argument in violation of Judge Lodge's ruling and started to bring in some facts. But, counsel, with respect, it seems... this reminds me of the elephant and the blind man. You're looking at the elephant one way, and the prosecution looks at it another way. The judge looked at it another way. Each are looking at different parts of the elephant and describing what they see. And as my standard here is a very difficult one for you to meet. You've got to show that after weighing these five LeMay factors, that it was illogical, implausible, or without support in the inferences. And how can you do that? How do you reach that goal, that burden? Well, I think in making that showing, what we have to do is rely on the ultimate ruling that the judge made. And the ultimate ruling that the judge made, in essence, was contradictory and presented the jury with evidence that was of no value. It didn't provide modus operandi. It didn't provide similar circumstances. It simply told them, in essence, that this was a bad person who you should convict. I see my time's up. We'll give you a minute, because we kind of use some of your time. Let's hear from the government, and then we'll give you a minute of rebuttal. Good morning. Good morning, Your Honors. Move this up. Serena Case Hargrove, on behalf of the United States. One small, quick correction first. Although this wasn't raised in the briefing, Judge Lodge did offer to listen and ask the attorneys when he issued his decision on the motion in Lemonnet to ask for a hearing if they wished to have one in order to comply with Rule 12. And that's footnote 2ER8. In terms of the questions about the 404B ruling versus the 413 ruling, there is no contradiction there. As both Lemay and the Advisory Committee notes explain in Rule 413, that rule is designed to supersede the restrictive aspects of Rule 404B. Where Rule 404B is a rule of exclusion that has exceptions to it that would allow for admission, Rule 413 is a rule of admission. And that makes all the difference. Lemay commented on this at page 1032, the Lemay decision, that the rule was specially designed to allow for admission and is indeed the reverse of Rule 404B. What about the similarity analysis, though? Because it seems like we have a case law that says, and I think it's Glanzer, and I can't remember if Glanzer was 404B or 413, but I don't really know that it matters. The judge is supposed to fully evaluate the factors enumerated in Lemay and Glanzer and then make a ruling, especially regarding the similarity factor. And here, it does give me some pause, the level of generality on the 413, even though it's a rule of admission instead of proscription, that the only similarity that the judge found was nonconsensual. That's it. And one of them was a prior conviction was for a child. And there's been some discussion in our case law about whether or not that should really be the basis, just that one statement of, oh, they're both nonconsensual, when potentially the incidents could look very different. And there's examples of that in our case law. So I'd like to know your position regarding that. Do you think and will you advocate forward from here that that's sufficient, just that one statement? Your Honor, Judge Lodge carefully reviewed the briefing and the briefing went into great detail on the underlying facts. But his ruling did not. You're absolutely correct. All right. And so if you could answer my question, do you think that's a sufficient basis going forward that just, okay, I looked at this one, even though that other, the prior conviction involving aggravated sexual abuse of a minor could have been a four-year-old, it could have been, you know, a three-year-old. And then this one, you know, was an adult female who was 28 or 30. So I'm just, I just want to know what your, what your views are on that. Your Honor, it would be preferable to have a more detailed decision from the court, certainly. In this case, however, the judge did review the underlying facts, which were included in the government's briefing. And as your Honor pointed out, those underlying facts make the convictions extremely similar. The court then did a huge favor to the defense and only allowed evidence of the conviction itself to come before the jury. The court sanitized that prior conviction. And that is in sharp contrast to what the court could have done. If you look at LeMay, there was a prior conviction in that case as well. And the mother was allowed to testify about the facts underlying the prior conviction, which were extremely inflammatory, involving the rape of her infant child and her toddler. And that was despite the fact that there was a conviction. The rule even allows for unconvicted bad prior conduct to be explored and presented to the jury. So here what Judge Lodge did was he altered the balance, the 403 balance considerably by sanitizing that prior conviction. And he allowed it in precisely for the reasons that the rule provides. I mean, this rule was designed to allow for admission of crimes. And it specifically sets forth the chapter, Chapter 109A, under which the defendant's conviction occurred. So the court was really following that rule closely. And it did a huge favor to the defendant that it did not have to do by sanitizing that conviction. Do these rules of admission, if you will, 413, 414, as a matter of statutory or how do we treat that? Absolutely not, Your Honor. The case law makes it very clear that 403 balancing is vital to really to the constitutionality of the rule. And that, I think, is where Judge Lodge did a very wise and helpful thing because, I mean, the probative value, LeMay counsels that the probative value of a prior conviction is going to be higher than the probative value of some uncharged misconduct. So the then Judge Lodge really sanitized the potential prejudicial effect by allowing solely the fact of conviction. Now, are there any other factors in LeMay that help your case? Absolutely, Your Honor. The time and frequency actually help us considerably for an interesting reason. And that is, although the offenses happened a decade apart, Mr. Bowman was incarcerated for seven or eight of those years. So he really only had two years in which he could commit offenses like this again, and he did. So those are the two factors, similarity, and now frequency is just one act, one prior act. True, Your Honor, one prior act that resulted in a conviction. But it's also intervening. There's an intervening factor and then also necessity, is that right? Yes, Your Honor, and necessity helps as well. Why don't you explain why necessity helps? Certainly. Necessity does not mean that the government absolutely requires it in its case. LeMay makes clear that it just has to be necessary or that necessary means helpful to the government's case, and that's at page 1029. LeMay also counsels at 1020 that where the defendant says that the victim's statement has no relevance, the facts are going to be relevant, highly relevant under the rule. And so that weighs into that 403 balancing. It seems like that was critical here. I mean, when you look at the facts in this case, there was no physical evidence here. It was her word against his. Basically, what happened here, both of them were drinking, both of them, there were drugs involved. And so to me, even though the factor of whether it's helpful, it also puts a spotlight on how important it is to adhere to the 403 factors and to have more of a detailed analysis than what the district court gave us here. I don't know what the effect of the ruling was and how he implemented the ruling, did sanitize and follow that through. But my concern is, would he have done that with a different set of facts? Because his level of generality in finding the similarity under 413 is a little, gives me some pause. It was general, Your Honor. You're correct about that. And I believe that's why we included some of the underlying briefing as well, to make it clear when he says that he read the briefing closely and really considered it carefully, that that's what he was considering. I would highlight, though... But you agree a more detailed analysis or weighing of the facts here would have been helpful? Yes, Your Honor. And preferable, certainly. I think with the press of business and so on and everything a trial court is facing, it's understandable, but ideally it certainly would have been better to spell it out more. I would like to highlight for Your Honors the closing arguments of the parties. I didn't try this case, and so I read the entire transcript. And the thing that really jumped out at me and one of the things that our prosecutor highlighted in her closing was this woman who testified for different clothing to wear because she felt dirty after being in the casino for 48 hours or so and wanted to wash her clothes. And she had been wearing pants and a blouse. So she washed her clothes, she testified. And she borrowed from the defendant some stretchy shorts and a big T-shirt. And she testified that when the defendant, her half-brother, raped her, he was able to pull those elastic shorts off very easily. And we introduced a photo that corroborated the victim's testimony about where she placed that clothing when she went into the bathroom. And, indeed, there was a shirt just like she described in those elastic shorts, just as she described in that place. The defendant offered contradictory testimony. He testified that she was still wearing the clothes she had worn the night before and that she helped him take her pants off and her blouse off, which required unbuttoning and doing various other things. So the testimony was contradictory. He couldn't recall anything much about giving her clothing. And the prosecutor really highlighted that. It was interesting because it jumped out to me when I read the transcript. And she focused on that as well. So this wasn't a corroboration. The victim testified extremely credibly. And there were some factors that supported her testimony. But there's no doubt that this was important. Either of my colleagues have additional questions? Just real briefly, the 412 argument. Yes, the 412. The defendant or the appellate makes the argument that they were not able to sufficiently go into what happened later for the victim that night, the same night that she had been sexually assaulted by the defendant in this case. I'd like to know your response. I think the main thrust of the argument is that it did not allow the defendant to attack the defendant. And the appellate makes the argument, and they're arguing that they weren't able to adequately present a defense. They were able adequately to present a defense. And Wood explains that when other evidence less laden perhaps with the danger of unfair prejudice is allowed to be introduced to establish a point, even if it doesn't establish the full point that the defense would like to make, it allows them to establish a point. There is a substantial decrease in the constitutional concern there. And that's precisely what we have here. The defense was allowed to introduce testimony from Aaron Holt about the victim's drug use that night, about the partying, about going to the casino, about sleeping together, and about, in his words, not acting like a rape victim. Mr. Holt testified that the defendant, although she cried and was upset when she told him about what had happened, she just wasn't devastated the way he thought she would be. And that's at ER 440. They were allowed to introduce their defense through Aaron Holt and others. And that satisfies the constitutional concern. The court carefully balanced and reviewed the evidence and concluded that it was unduly prejudicial, substantially outweighed. Thank you. Thank you, Counsel. Thank you, Your Honors. We would ask that the court affirm. Thank you. Counsel, we'll give you two minutes since we gave her a little lecture, so go ahead. I greatly appreciate that. I'd like to start where it just ended. And the government said that the victim testified credibly. And our position is that part of the reason why the jury may have found her credible was because we could not bring out the evidence that was just spoken about. And that evidence was important because the government was allowed to effectively prop up its victim by having other people testify that she behaved consistently in the aftermath with what we would expect from a rape victim. And here we had evidence that she had casual sex with someone she just met within approximately 24 hours of purportedly being raped. We were not allowed to bring out that evidence. Yeah, but you had ample opportunity to attack her credibility, and you did so. I don't know if you were the lawyer down below. And in light of Wood, what is your response to that? Well, I think it's important to realize that in Wood, the allegations were that the purported victim had acted, I believe, in pornographic films. So Wood deals with a something more typical. That's not what we were doing here. What we were attempting to do was say, contrary to what the government is bringing forth in its case, this complainant did not behave consistently as a rape victim. That's different than trying to say she's of loose morals. We never intended to do that. But there was plenty of testimony through Holt as to what happened immediately thereafter. The only part that was excised on their 4-3 analysis was whether or not she had sex with him. But certainly her conduct in the 24 hours following the incident would allow the jury, would have plenty of ammunition for the jury to conclude that conduct was inconsistent with that of a rape victim, and they apparently were not persuaded. The jury could conclude, for example, that she was partying or doing drugs. But the jury might very well conclude that the use of drugs is consistent with trying to numb the pain, which in fact was something that she had said on numerous occasions. What the jury was never allowed to hear was that she had sex with someone she just met. That's entirely different. And in fact, if we look at the closing arguments... ...that she had consented to have sex with her half-brother. The two seem to be not like similar circumstances. Your Honor, we believe that what it goes to show is it rebuts the government's contentions that it opened the door to, in its case in chief, that she was behaving consistently with what we would expect a rape victim to do. So we should have been allowed to bring this out. Just the sex part of it is what was excluded. Correct, Your Honor. But not only was the sex part of it excluded. During closing argument, when I made a closing argument that in fact the complainant and Mr. Holt slept together, the district court not only erroneously upheld an objection, it struck that from the record and said there's no evidence to support that. When in fact, words matter. I chose my words carefully. You said your words were it ends with her sleeping with Aaron Holt. I don't know. Sleeping is having sex? No. Sleeping is sleeping. That's all I was allowed to say. And in fact, the district court struck my remark and said that there was no evidence of that. When if we look at pages 401, 433 to 34 and 424, there was evidence of it. I accurately stated it. So the district court never allowed us to use the word sex. And in fact, it erroneously excluded my argument. I'm well over time, but I appreciate it. Thank you both, counsel, for your arguments. We appreciate it. The case just argued is submitted.
judges: M. Smith, Murguia, Robreno